# IN THE DISTRICT COURT OF THE VIRGIN ISLANDS
## DIVISION OF ST. CROIX

| | |
|---|---|
| Noel Daniel, *Plaintiff* <br><br> v. <br><br> Hess Corporation, <br> Hess Oil New York Corp, *as successor by merger of* <br> Hess Oil Virgin Islands Corp., and <br> Virgin Islands Industrial Maintenance Corp. <br><br> *Defendants* | **20-cv-86** <br> *Sup. Ct. SX-20-CV-580* <br><br> **Jury Trial Demanded** |

## COMPLAINT

Plaintiff Noel Daniel brings this action for damages under the laws of the United States Virgin Islands, demands a trial by jury, and makes the following allegations based on information, belief, and investigation of counsel, except those allegations that pertain to Plaintiff, which are based on personal knowledge:

### PARTIES, JURISDICTION, AND VENUE

1. Plaintiff is a citizen and resident of St. Croix, United States Virgin Islands.

2. Defendant Hess Corporation is a Delaware corporation, having its principal place of business in New York.

3. Defendant Hess Oil New York Corp. ("HONYC") is a New York Corporation with its principal place of business in New York and on May 22, 2020 became the successor by merger of Hess Oil Virgin Islands Corp. (HOVIC) a prior U.S. Virgin Islands corporation, having its prior principal place of business in New York.

4. Defendant Virgin Islands Industrial Maintenance Corp. ("IMC") is a Virgin Islands corporation, having its principle place of business in the Virgin Islands.

5. The Superior Court has subject matter jurisdiction pursuant to 4 V.I.C. § 76.

6. Venue in this District, Saint Croix, is proper pursuant to 4 V.I.C. § 78 as the conduct

*Amended Complaint*

complained of in this Complaint was carried out in substantial part within this judicial division.

### FACTUAL ALLEGATIONS RE: THE PLAINTIFF

7. Plaintiff worked at the oil refinery previously-owned by HOVIC on St. Croix, Virgin Islands (the "Oil Refinery").

8. He worked at the Oil Refinery from 1978 to 1997.

9. During his work at the Oil Refinery, Plaintiff worked as a field time keeper, inspector, in an environmental hazardous waste capacity, and in maintenance.

10. At all times relevant to this action, IMC was the principal supplier of laborers to conduct turnarounds and routine maintenance of the Oil Refinery. These laborers included pipefitters, masons, boilermakers and other skilled and unskilled manpower that worked to keep the Oil Refinery in working order. IMC had a primary responsibility train workers to identify, abate, remove asbestos, as well as warn of its dangers.

11. In the course of his employment at the Oil Refinery, Plaintiff was exposed to dusts from asbestos containing materials ("ACM"), silica, and catalyst.

12. Plaintiff used substantard respiratory protection during his employment at the Oil Refinery, which was wholly inadequate to guard against the inhalation of toxic substances like asbestos, silica, and catalyst.

13. On November 9, 2018, Plaintiff was administered a chest x-ray, which revealed parenchymal changes diagnostic of pneumoconiosis. A NIOSH certified B-reader concluded that Plaintiff suffers from an underlying lung disease in the form of bilaterial of parenchymal fibrosis. These changes and disease are consistent with exposure to asbestos, silica, and/or catalyst in the workplace.

14. Plaintiff's lung disease is characterized by shortness of breath, diminished lung capacity, and other respiratory ailments.

*Amended Complaint*

15. This disease and injury are the direct and proximate result of Plaintiff's repeated exposure to various toxic substances during his work at Oil Refinery.

16. Plaintiff's injuries are current and will continue for the rest of his life. He seeks recompense for his pain and suffering; his medical bills and anticipated medical needs in the future; and the diminution in quality and enjoyment of his life.

17. Plaintiff fears the progression of his respiratory symptoms and reasonably fears that he may develop cancer as a result of persistent exposure to toxic materials and substances.

18. Plaintiff is also at a medically and statistically significant increased risk of developing lung cancer, mesothelioma, and other cancers.

## FACTUAL ALLEGATIONS RE: THE OIL REFINERY

19. HOVIC owned and operated an Oil Refinery on St. Croix from 1966 to 1998. The Oil Refinery transformed and refined crude petroleum into various useful products.

20. At all relevant times to this action, the Oil Refinery was owned by HOVIC.

21. At all relevant times, HOVIC was a wholly-owned subsidiary of Hess.

22. The Oil Refinery is a very large complex of units, many of which employ hot processes to transform feedstock into a refined product. These hot processes called for the use of extensive amounts of insulation to keep the boilers, heaters, and pipelines at a very high temperature. A large percentage of the insulation used at the Oil Refinery was asbestos-containing.

23. Silica is used as a sandblasting medium to clean piping, vessels, and tanks to prepare them for use in the Oil Refinery.

24. Many of the units at the Oil Refinery make use of catalyst to crack certain hydrocarbons into desirable components. The catalysts were made of heavy metals like nickel, molybdenum, and cobalt.

*Amended Complaint*

25. Research has shown that exposure to asbestos, silica, and catalyst can cause serious medical problems.

26. Oil refiners have long understood the dangers these compounds pose.

27. The U.S. Federal Government has long regulated the limits of industrial exposure to these dangerous materials.

28. The U.S. Virgin Islands has long regulated emisonsof fugitive particulate matters.

29. Industry must take all reasonable steps to guard against the release of asbestos, silica, and catalyst dusts through sound engineering principles.

30. During the course of his employment at the Oil Refinery, Plaintiff came into contact with and inhaled asbestos-, silica-, and/or catalyst-laden dusts well in excess of the government limits as well the scientific consensus standards.

31. Because engineering may not contain all dusting, persons in industrial settings that could be exposed to excessive dust levels must be given proper and timely warnings, training, and personal protective equipment, including respiratory protection.

32. Government regulators have also required industrial facilities to conduct air tests to assess the concentration of particulate matter. At all relevant times, the Oil Refinery was not equipped with the appropriate equipment to measure particulate concentration. The limited testing that was conducted was substandard, and the tests failed to accord with industry and scientific best practices.

33. IMC, Hess and HOVIC knew of the Government's exposure limits and their importance to the health of workers in industrial settings.

34. IMC's workforce routinely used, handled, and/or manipulated asbestos-containing materials, silica, and catalyst ("toxic substances") as part of their work at the facility.

35. IMC lacked the expertise to anticipate, identify, evaluate, and train various refinery workers to encounter these toxic substances safely.

36. IMC failed to adopt timely and adequate occupational safety and health policies and procedures regarding the appropriate use, handling, and manipulation of these toxic substances. In particular, IMC failed to timely and adequately anticipate potential exposures to these toxic substances; failed to timely and adequately identify and monitor exposures to these toxic substances; failed to timely and adequately train and warn of the hazards associated with exposures to these toxic substances; and failed to timely and adequately provide appropriate personal protective equipment to reduced and/or eliminate exposures to these toxic substances.

37. As a result of these failures, IMC's failure to implement proper toxic substance protocols and safety measures resulted in refinery workers, like the Plaintiff, suffering needless exposure to toxic substances, like asbestos, which causes the Plaintiffs' lung scarring.

38. These failures to adopt and enforce timely and adequate occupational health and safety policies and procedures were negligent. IMC knew or should have known that these failures risked worker exposure to the toxic substances.

39. IMC knew or should have known that, in the absence of robust occupational health and safety policies, procedures and enforcement, all exposed refinery personnel were placed at substantially increased risk of developing lung disease.

40. From IMC's vantage, it was reasonably foreseeable that Plaintiff would be exposed to the toxic substances and be injured.

41. Defendants knew or should have known that the Oil Refinery did not have an adequate respiratory policy.

## CAUSES OF ACTION AGAINST HESS CORPORATION

### Count 1 – Negligent Undertaking

42. Plaintiff hereby realleges and incorporates by reference all previous paragraphs as if

*Amended Complaint*

fully set forth herein.

43. Hess is liable to Plaintiff under Section 324A of the Restatement (Second) of Torts, which articulates a sound rule for the Virgin Islands.

44. Hess undertook to render services to HOVIC and its contractors, including IMC, at the Oil Refinery.

45. In particular, Hess oversaw the construction of the St. Croix Refinery in 1965 and operated the Refinery until October 1998. During this period, Hess ran the refinery from New Jersey. Hess created and implemented policies at the refinery. These policies included the refinery's safety policies, which were created by Hess "with the express intent of being not only guidance, but operable" in the refinery. Indeed, the policies issued by Hess to HOVIC demanded compliance. And, Hess regularly scheduled safety audits to determine compliance with safety policies.

46. Hess should have recognized the services it provided to its subsidiaries were necessary for the protection of Plaintiff, generally or in particular.

47. Hess failed to exercise reasonable care.

48. The failure to exercise reasonable care increased the risk of harm to Plaintiff.

49. Hess undertook to perform a duty owed by HOVIC and/or its contractors to Plaintiff.

50. Plaintiff suffered harm because HOVIC and/or its contractors relied on Hess to fulfill its undertaking.

51. Plaintiff suffered harm because he relied on Hess to fulfill its undertaking.

52. Hess directly and proximately caused, and is legally responsible and liable for, Plaintiff's exposure to toxic substances, as well as the harm and damages Plaintiff has sustained as a result of his exposure.

**Count 2 – Chattel Known to be Dangerous for Intended Use**

53. Plaintiff hereby realleges and incorporates by reference all previous paragraphs as if

*Amended Complaint*

fully set forth herein.

54. Hess is liable to Plaintiff under Section 388 of the Restatement (Second) of Torts, which articulates a sound common law rule for the Virgin Islands.

55. Hess supplied ACM, catalyst, and silica—"Chattels"—to its contractors and their employees at the Oil Refinery..

56. Hess expected its contractors and their employees (including Plaintiff) to use the Chattels, as well as expected that Plaintiff could be endangered by the probable uses of those chattels

57. Plaintiff was harmed by the Chattels supplied by Hess to HOVIC and/or its contractors and employees for use at the Oil Refinery.

58. Hess knew or had reason to know that the Chattels are dangerous or likely to be dangerous to humans.

59. Hess had no reason to believe that its contractors or Plaintiff would realize the dangerous condition posed by the Chattels.

60. Hess failed to exercise reasonable care to inform HOVIC, its contractors, or Plaintiff of the dangerousness of the Chattels or the facts which make them dangerous.

61. Hess directly and proximately caused, and is legally responsible and liable for, Plaintiff's exposure to the Chattels, as well as the harm and damages Plaintiff has sustained as a result of his exposures.

**Count 3 – Chattel Unlikely to be Made Safe for Use**

62. Plaintiff hereby realleges and incorporates by reference all previous paragraphs as if fully set forth herein.

63. Hess is liable to Plaintiff under Section 389 of the Restatement (Second) of Torts, which articulates a sound common law rule for the Virgin Islands.

64. Hess supplied ACM, catalyst, and silica—"Chattels"—to its contractors and their employees at the Oil Refinery.

65. While Hess provided warnings and MSDS sheets to HOVIC and its contractors, those warnings and sheets went unheeded. Hess knew or should have known that its warnings and sheets were not being communicated to the workforce at the Oil Refinery.

66. Hess knew or should have known that the Chattels were unlikely to be made reasonably safe before being put to the use at the Oil Refinery in the manner expected.

67. Plaintiff was a foreseeable user of the Chattels, as well as endangered by the probable use of those Chattels.

68. Plaintiff was ignorant as to the dangerous character of the Chattels and was not contributorily negligent.

69. Hess directly and proximately caused, and is legally responsible and liable for, Plaintiff's exposure to the Chattels, as well as the harm and damages Plaintiff has sustained as a result of this exposures.

**Count 4 – Chattel for Use by Person Known to be Incompetent**

70. Plaintiff hereby realleges and incorporates by reference all previous paragraphs as if fully set forth herein.

71. Hess is liable to Plaintiff under Section 390 of the Restatement (Second) of Torts, which articulates a sound common law rule for the Virgin Islands.

72. Hess supplied ACM, catalyst, and silica—"Chattels"—to HOVIC and its contractors and their employees at the Oil Refinery.

73. Hess knew or had reason to know that HOVIC and/or its contractors and their employees at the Oil Refinery were using the Chattels in a manner that involved an unreasonable risk of physical harm to Plaintiff.

74. In particular, Hess knew or had reason to know that HOVIC and/or its contractors were incompetent, as they facility lacked an adequate respiratory policy prior to the mid-1990s and ignored OSHA regulations.

75. Hess should have expected that Plaintiff would be endangered by the use of the Chattels at the Oil Refinery.

76. Hess directly and proximately caused, and is legally responsible and liable for, Plaintiff's exposure to the Chattels, as well as the harm and damages Plaintiff has sustained as a result of his exposures.

**Count 5 – Chattel Used to Supplier's Business Purpose**

77. Plaintiff hereby realleges and incorporates by reference all previous paragraphs as if fully set forth herein.

78. Hess is liable to Plaintiff under Section 392 of the Restatement (Second) of Torts, which articulates a sound common law rule for the Virgin Islands.

79. The Hess Refinery served Hess's business purpose.

80. At all relevant times, Hess operated a multinational and vertically-integrated energy portfolio, consisting of on-shore and off-shore exploration and production, transportation, refinement, and marketing/selling finished product.

81. Hess supplied ACM, catalyst, and silica—"Chattels"—to the Hess Refinery for use.

82. Those asbestos-containing materials served Hess's business purposes because it facilitated refinement operations.

83. The Chattels were ultimately supplied to the employees at the Hess Refinery, who used, installed, handled, manipulated, fabricated, removed, and/or disposed of it.

84. Hess should have expected that Plaintiff and other employees at the Oil Refinery would be endangered by the probable use of the Chattels.

*Amended Complaint*

85. Plaintiff sustained physical harm caused by the use of the Chattels.

86. Hess failed to exercise reasonable care to make the Chattels safe for the use for which it was supplied.

87. Hess failed to exercise reasonable care to discover the dangerous condition or chacter of the Chattels it supplied.

88. Hess failed to inform Plaintiff or the other employees at the Hess Refinery of the discover the dangerous condition or chacter of the Chattels it supplied.

89. Consequently, Hess directly and proximately caused, and is legally responsible and liable for, Plaintiff's exposure to the Chattels, as well as the harm and damages Plaintiff sustained as a result of this exposure.

## CAUSES OF ACTION AGAINST HESS OIL VIRGIN ISLANDS CORP.

### Count 6 – Premises Liability

90. Plaintiff hereby realleges and incorporates by reference all previous paragraphs as if fully set forth herein.

91. HOVIC is liable to Plaintiff as a premise in accordance with the rule articulated in *Machado v. Yacht Haven, U.S.V.I., LLC*, 61 V.I. 373 (2014).

92. HOVIC was a legal possessor of the Oil Refinery from 1966 to 1998, and it was a possessor during Plaintiff's working years at the Oil Refinery.

93. HOVIC had knowledge of the harmful nature of, and danger posed by ACM, silica, and catalyst at all times while Plaintiff was on the Oil Refinery premises.

94. HOVIC knew that this exposure to ACM, silica, and catalyst posed a foreseeable and unreasonable risk of harm to Plaintiff and others.

95. HOVIC had a duty to exercise reasonable care including providing Plaintiff with a safe work environment and warning Plaintiff of any dangers that it could not make safe.

*Amended Complaint*

96. This foreseeable harm could have been prevented if HOVIC had implemented and enforced proper safety measures at the Oil Refinery, and had also warned Plaintiff of the dangers.

97. HOVIC knew or should have known that Plaintiff would not discover or realize the danger, as HOVIC was in a superior position of power and knowledge.

98. HOVIC breached its duty by failing to use reasonable care to protect Plaintiff, by failing to warn Plaintiff of the dangers, and by failing to provide a safe work environment.

99. HOVIC's actions and failures to act include:

    a. Failing to adequately monitor the concentration of ACM, silica, and catalyst in the air;

    b. Failing to take appropriate safety precautions regarding to toxic, carcinogenic, hazardous, and/or irritating dusts, fumes, and other substances;

    c. Failing to provide and require the wearing of protective clothing;

    d. Failing to provide effective masks, respirators, and/or fresh air sources;

    e. Failing to provide adequate changing rooms, showers, laundry, and other safety services for exposed workers;

    f. Failing to post warning signs;

    g. Failing to warn Plaintiff of the health risks associated with exposure to toxic substances, including asbestos, silica, and catalyst;

    h. Failing to timely and appropriately train Plaintiff and his co-workers;

    i. Failing to timely and appropriately engage in medical surveillance of exposed persons, including Plaintiff;

    j. Failing to timely and appropriately monitor workforce exposure and health, including that of Plaintiff.

*Amended Complaint*

100. HOVIC directly and proximately caused, and is legally responsible and liable for, Plaintiff's exposure to ACM, silica, and catalyst, as well as the harm and damages Plaintiff has sustained as a result of this cumulative exposure.

**CAUSES OF ACTION AGAINST HESS OIL VIRGIN ISLANDS CORP.
and
VIRGIN ISLANDS INDUSTRIAL MAINTENANCE CORP.**

**Count 7 – Chattel Known to be Dangerous for Intended Use**

101. Plaintiff hereby realleges and incorporates by reference all previous paragraphs as if fully set forth herein.

102. HOVIC and IMC are liable to Plaintiff under Section 388 of the Restatement (Second) of Torts, which articulates a sound common law rule for the Virgin Islands.

103. HOVIC and IMC supplied ACM, silica, and catalyst—"Chattels"—to its contractors and their employees at the Oil Refinery.

104. HOVIC and IMC expected its contractors and their employees (including Plaintiff) to use the Chattels, as well as expected that Plaintiff could be endangered by the probable uses of the Chattels

105. Plaintiff was harmed by the Chattels supplied by HOVIC and IMC to the Oil Refinery for use.

106. HOVIC and IMC knew or had reason to know that the Chattels are dangerous or likely to be dangerous to humans.

107. HOVIC and IMC had no reason to believe that its contractors or Plaintiff would realize the dangerous condition posed by the Chattels.

108. HOVIC and IMC failed to exercise reasonable care to inform either its contractors or Plaintiff of the dangerousness of the Chattels or the facts which make them dangerous.

*Amended Complaint*

109. HOVIC and IMC directly and proximately caused, and is legally responsible and liable for, Plaintiff's exposure to the Chattels, as well as the harm and damages Plaintiff has sustained as a result of his exposures.

**Count 8 – Chattel Unlikely to be Made Safe for Use**

110. Plaintiff hereby realleges and incorporates by reference all previous paragraphs as if fully set forth herein.

111. HOVIC and IMC are liable to Plaintiff under Section 389 of the Restatement (Second) of Torts, which articulates a sound common law rule for the Virgin Islands.

112. HOVIC and IMC supplied ACM, silica, and catalyst—"Chattels"—to its contractors and their employees at the Oil Refinery for use.

113. While HOVIC and IMC provided warnings and MSDS sheets to its contractors, those warnings and sheets went unheeded. HOVIC and IMC knew or should have known that its warnings and sheets were not being communicated to the workforce at the Oil Refinery.

114. HOVIC and IMC knew or should have known that the Chattels were unlikely to be made reasonably safe before being put to the use at the Oil Refinery in the manner expected.

115. Plaintiff was a foreseeable user of the Chattels, as well as endangered by the probable use of those Chattels.

116. Plaintiff was ignorant as to the dangerous character of the Chattels and was not contributorily negligent.

117. HOVIC and IMC directly and proximately caused, and is legally responsible and liable for, Plaintiff's exposure to the Chattels, as well as the harm and damages Plaintiff has sustained as a result of this exposures.

*Amended Complaint*

**Count 9 – Chattel for Use by Person Known to be Incompetent**

118. Plaintiff hereby realleges and incorporates by reference all previous paragraphs as if fully set forth herein.

119. HOVIC and IMC are liable to Plaintiff under Section 390 of the Restatement (Second) of Torts, which articulates a sound common law rule for the Virgin Islands.

120. HOVIC and IMC supplied asbestos products and catalyst—"Chattels"—to its contractors and their employees at the Oil Refinery.

121. HOVIC and IMC knew or had reason to know that its contractors and their employees at the Oil Refinery were using the Chattels in a manner that posed an unreasonable risk of physical harm to Plaintiff.

122. In particular, HOVIC and IMC knew or had reason to know that its contractors were incompetent, as they facility lacked an adequate respiratory policy prior to the mid-1990s and ignored OSHA regulations.

123. HOVIC and IMC should have expected that Plaintiff would be endangered by the use of the Chattels at the Oil Refinery.

124. HOVIC and IMC directly and proximately caused, and is legally responsible and liable for, Plaintiff's exposure to the Chattels, as well as the harm and damages Plaintiff has sustained as a result of his exposures.

**Count 10 – Chattel Used to Supplier's Business Purpose**

125. Plaintiff hereby realleges and incorporates by reference all previous paragraphs as if fully set forth herein.

126. HOVIC and IMC are liable to Plaintiff under Section 392 of the Restatement (Second) of Torts, which articulates a sound common law rule for the Virgin Islands.

127. The Oil Refinery served HOVIC's business purpose.

*Amended Complaint*

128. HOVIC and IMC supplied ACM, silica, and catalyst—"Chattels"—to the Hess Refinery for use, which served HOVIC's business purpose.

129. The Chattels were ultimately supplied to the employees at the Hess Refinery, who used, installed, handled, manipulated, fabricated, removed, and/or disposed of it.

130. HOVIC and IMC should have expected that Plaintiff and other employees at the Oil Refinery would be endangered by the probable use of the Chattels.

131. Plaintiff sustained physical harm caused by the use of the Chattels.

132. HOVIC and IMC failed to exercise reasonable care to make the Chattels safe for the use for which they were supplied.

133. HOVIC and IMC failed to exercise reasonable care to discover the dangerous condition or chacter of the Chattels it supplied.

134. HOVIC and IMC failed to inform Plaintiff or the other employees at the Hess Refinery of the discover the dangerous condition or chacter of the Chattels it supplied.

135. Consequently, HOVIC and IMC directly and proximately caused, and is legally responsible and liable for, Plaintiff's exposure to the Chattels, as well as the harm and damages Plaintiff sustained as a result of this exposure.

### NOTICE OF PUNITIVE DAMAGES

136. Plaintiff gives notice that they intend to seek punitive damages against Hess and HOVIC and IMC

137. Hess's and HOVIC and IMC's respective failures as described herein were intentional and/or done or with a willful or reckless disgregard of the the rights of others, including the plaintiff.

138. An award of punitive damages is warranted to punish the defendants, deter similar conduct by others, encourage others harmed to step forward, and to additionally compensate Plaintiff for the egregious conduct to which he was subjected.

*Amended Complaint*

## JURY TRIAL DEMANDED

139. Plaintiff demands a trial by jury, pursuant to 5 V.I.C. § 358 and Rule 38(b) of the Virgin Islands Rules Civil Procedure, of all issues so triable.

## REQUEST FOR RELIEF

WHEREFORE, Plaintiff requests:

a. After trial by jury, he be awarded full monetary damages afforded by law, including punitive damages;

b. He be awarded pretrial interest from the date of the initial Complaint through final judgment;

c. He be awarded his costs; and

d. The Court grant such additional relief as may be deemed just and proper.

**DATED:**     **Nov. 3, 2020**          Respectfully submitted,

**/s/Korey A. Nelson, Esq.**
Korey A. Nelson, Esq.
BURNS CHAREST LLP
365 Canal Street, Suite 1170
New Orleans, LA 70130
Telephone: (504) 799-2845
Facsimile: (504) 881-1765
KNelson@BurnsCharest.com
JSoyka@BurnsCharest.com

**/s/ J. Russell B. Pate, Esq.**
J. Russell B. Pate, Esq.
THE PATE LAW FIRM
P.O. Box 370, Christiansted
St. Croix, USVI 00821
Telephone: (340) 777-7283
Facsimile: (888) 889-1132
Pate@SunLawVI.com
SunLawVI@gmail.com